IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                          PLAINTIFF/RESPONDENT

V.             Case No. 5:08-cr-50058-TLB-MEF

JUAN CARLOS CACERES-MEJIA                    DEFENDANT/PETITIONER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Petitioner's Motion for Reduction of Sentence Pursuant to 28 U.S.C. § 2255 and Memorandum of Points and Authorities by a Person in Federal Custody filed July 17, 2015. (Doc. 64) The United States filed its Response on September 4, 2015. (Doc. 67) Petitioner did not file a reply. The matter is ready for Report and Recommendation.

**I. Background**

Petitioner, Juan Carlos Caceres-Mejia ("Caceres-Mejia"), was arrested by the Fayetteville, Arkansas Police Department on February 14, 2008 for possession of a controlled substance. (Doc. 32-1, p. 1; Doc. 52, p. 10) Shortly thereafter, on March 6, 2008, Caceres-Mejia, a citizen of Honduras (Doc. 32; Doc. 52, p. 2), was arrested by Immigration and Customs Enforcement ("ICE") for alien inadmissibility, and he was deported sometime in 2008 (Doc. 52, p. 10). On August 20, 2008, a one count Indictment naming Caceres-Mejia was filed in the Western District of Arkansas, Fayetteville Division, charging him with conspiracy to distribute more than 500 grams of methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 21 U.S.C. § 846. (Doc. 1) After being deported in 2008, Caceres-Mejia apparently resided in Honduras until 2014, and he returned to the United States illegally. (Doc. 32) Caceres-Mejia was arrested on the warrant filed in this case on June 27, 2014 in the Southern District of

Texas, and he was subsequently returned to the Western District of Arkansas. (Docs. 30, 32)

Caceres-Mejia made his initial appearance before the Hon. Erin L. Setser on July 30, 2014, where he entered a plea of not guilty to the Indictment and waived the issue of detention. (Doc. 34) Ray Niblock ("Niblock"), a CJA Panel attorney, was appointed to represent Caceres-Mejia. (Docs. 34, 38)

On October 3, 2014, Caceres-Mejia appeared with counsel before the Hon. Timothy L. Brooks for a waiver of indictment, arraignment, and change of plea hearing. (Doc. 47) Caceres-Mejia was advised of his right to be indicted by a Grand Jury and he waived indictment, indicating that he wished to enter a plea to an Information. (Doc. 47) A written Plea Agreement was presented to the Court wherein Caceres-Mejia agreed to waive Indictment and plead guilty to an Information charging him with one count of the use of a communication facility in facilitating a drug trafficking crime. (Doc. 48, ¶ 1) Regarding his alienage, the Plea Agreement set forth that Caceres-Mejia recognized that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States; that the offense to which he is pleading guilty is a removable offense; and, that Caceres-Mejia "nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequences are his automatic removal from the United States, the denial of citizenship and/or the denial of admission to the United States in the future." (Doc. 48, ¶ 9) The Court reviewed the Plea Agreement with Caceres-Mejia, inquiring about his satisfaction with counsel, and advising him of his rights and the maximum penalties upon his entry of a guilty plea. (Doc. 47) A factual basis was set forth to which Caceres-Mejia agreed. (Doc. 47; Doc. 48, ¶ 2) Caceres-Mejia entered a plea of guilty to the Information. (Doc. 47) The Court accepted Caceres-Mejia's guilty plea, expressed tentative approval of the Plea

Agreement, and ordered a presentence investigation report ("PSR"). (Doc. 47)

An initial PSR was prepared by the United States Probation Office on December 18, 2014. Doc. 49) No objections were made to the PSR by the United States, but Caceres-Mejia made one objection (to paragraphs 19, 33, and 34 through 48) regarding the quantity of methamphetamine for which he was being held accountable. (Doc. 52-1) U.S. Probation rejected Caceres-Mejia's objection as to drug quantity, and a final PSR was submitted on January 13, 2015. (Doc. 52) Caceres-Mejia was determined to be accountable for 1.537 kilograms of methamphetamine (actual), resulting in a Base Offense Level of 36. (Doc. 52, ¶ 40) This was decreased two (2) levels for role in the offense (minor participant) (Doc. 52, ¶ 43), resulting in an Adjusted Offense Level of 34 (Doc. 52, ¶ 45). After a three (3) level reduction for acceptance of responsibility, Caceres-Mejia's Total Offense Level was determined to be 31. (Doc. 52, ¶¶ 46-48). Caceres-Mejia's criminal history resulted in a criminal history score of zero (0) placing him in Criminal History Category I. (Doc. 52, ¶ 52) The statutory range for the offense of conviction provided for a maximum term of imprisonment of four (4) years. (Doc. 52, ¶ 70) Caceres-Mejia's advisory guideline range was determined to be 108 to 135 months imprisonment. (Doc. 52, ¶ 71)

Caceres-Mejia appeared with his counsel for sentencing on February 13, 2015. (Doc. 54) The Court made inquiry that Caceres-Mejia was satisfied with his counsel; evidence was presented on behalf of the United States; it was determined that Caceres-Mejia and his counsel had the opportunity to read and discuss the PSR; the PSR was reviewed in open court; final approval of the Plea Agreement was expressed; both the United States and Caceres-Mejia were afforded the opportunity to make a statement to the Court; Caceres-Mejia was afforded the opportunity to present information in mitigation of sentence; and, the Court imposed a sentence of 48 months

imprisonment, one (1) year supervised release, a $500.00 fine (interest waived), and a $100.00 special assessment. (Doc. 54, pp. 1-2) Caceres-Mejia was advised of his appeal rights. (Doc. 54, p. 2) Judgment was entered by the Court on February 17, 2015. (Doc. 55) Caceres-Mejia did not pursue a direct appeal from the Judgment.

On July 17, 2015, Caceres-Mejia filed his *pro se* Motion for Reduction of Sentence Pursuant to 28 U.S.C. § 2255 and Memorandum of Points and Authorities by a Person in Federal Custody (the "Motion"). (Doc. 64) The Motion alleges that Caceres-Mejia's case presents "a unique instance in which his voluntary waiver of his removal rights, unusually harsh conditions of confinement, and rebuilding his life in a foreign less developed country, upon being deported, serves as three bases for a further downward variance, that were not addressed by defense council (sic) and hence was not considered by the Court." (Doc. 64, p. 1) Distilled to its essence, and broadly construing the Motion, Caceres-Mejia argues ineffective assistance of counsel for failure to raise the issue of the collateral consequences of Caceres-Mejia's alienage in mitigation at his sentencing. Caceres-Mejia asserts that his willingness to waive any procedural rights he has to an administrative removal proceeding, the "more onerous" prison term he must serve (not being assigned to a minimum security facility and not being able to serve the final ten percent of his sentence at a half-way house due to his alienage), and the "severe, post-imprisonment consequences of his conviction" (being "separated from his job, friends, and extended family forever") entitle him to relief. (Doc. 64, pp. 3-4) For relief, Caceres-Mejia seeks a reduction of his sentence to time served. (Doc. 64, p. 5)

The United States filed its Response to the Motion on September 4, 2015. (Doc. 67) In it, the United States contends that Caceres-Mejia's claims have been procedurally defaulted and that his request for a sentence reduction based on grounds for a downward departure or variance is not

cognizable in a § 2255 motion. (Doc. 67, pp. 5-7) Caceres-Mejia did not file a reply.

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A thorough review of Caceres-Mejia's Motion and the files and records of this case conclusively shows that Caceres-Mejia is not entitled to relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice without an evidentiary hearing.

### A. Procedural Default

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United*

*States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

In this case, Caceres-Mejia did not pursue any relief on direct appeal. Caceres-Mejia could have challenged that his guilty plea was knowingly and voluntarily made on appeal. *See DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000). He did not. By failing to do so, Caceres-Mejia procedurally defaulted the constitutional claims he now raises.

This procedural default may be excused only if Caceres-Mejia "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991).

Caceres-Mejia makes no such showing here. He fails to demonstrate how the factual or legal

basis for his constitutional claims was not reasonably available to him in time to pursue relief on direct appeal. Caceres-Mejia alleges that the collateral consequences of his alienage were not addressed by his counsel, but his Motion does not state that he would not have entered into the Plea Agreement and pleaded guilty had he known of the collateral consequences attendant to his alienage. (Doc. 64, p. 1) Nor could he. The Plea Agreement explicitly provided that Caceres-Mejia recognized that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States; that the offense to which he is pleading guilty is a removable offense; and, that Caceres-Mejia "nevertheless affirms that he wants to plead guilty ***regardless of any immigration consequences that his plea may entail***, even if the consequences are his automatic removal from the United States, the denial of citizenship and/or the denial of admission to the United States in the future." (Doc. 48, ¶ 9) (emphasis added) Caceres-Mejia was, therefore, clearly informed of his anticipated deportation following service of his sentence, and of possible collateral consequences that his guilty plea may entail due to his alienage, in time to pursue relief on direct appeal. He simply failed to do so.

Further, there is no assertion by Caceres-Mejia that some interference by government officials, or some external impediment, prevented him from raising his constitutional claims in the trial court or on direct appeal.

Since Caceres-Mejia has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Even so, Caceres-Mejia has presented absolutely no new, reliable evidence to support his challenge to the voluntary and intelligent nature of his guilty plea. "Without any new evidence of

innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Caceres-Mejia has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the constitutional claims he now asserts, and his § 2255 Motion should be dismissed.

### B.  Request for Downward Departure/Variance Not Cognizable Under § 2255

Caceres-Mejia seeks a reduction of his sentence to time served due to the voluntary waiver of his procedural rights at an administrative removal proceeding, the unusually harsh conditions of his confinement, and because he will be subject to "extraordinarily onerous" conditions after being deported. The United States counters that these sentence reduction requests are not cognizable under 28 U.S.C. § 2255. The United States is correct.

Federal habeas relief is limited to cases where the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief is available only if a prisoner demonstrates "a fundamental defect which inherently results in a complete miscarriage of justice," an error that "present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (internal citation omitted); *see also United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (applying standard). In seeking a downward departure or variance from his sentence, Caceres-Mejia has alleged no such grounds for relief in his Motion.

### C. Ineffective Assistance of Counsel Claims

Caceres-Mejia alleges in his Motion that the bases he sets forth in support of a sentence reduction "were not addressed by defense council (sic) and hence were not considered by the Court." (Doc. 64, p. 1) *Pro se* filings are to be construed liberally, *Earl v. Fabian*, 556 F.3d 717, 723 (8th Cir. 2009), and the undersigned concludes that Caceres-Mejia asserts a claim of ineffective assistance of counsel relating to counsel's failure to argue the collateral consequences of Caceres-Mejia's alienage in mitigation of sentence.

To prove a claim of ineffective assistance of counsel, Caceres-Mejia must demonstrate both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Eighth Circuit has recognized that alien status and the collateral consequences flowing therefrom may be an appropriate basis for departure. *United States v. Lopez-Salas*, 266 F.3d 842, 847 (8th Cir. 2001). The Court cautioned, however, that just because a factor unmentioned by the Sentencing Guidelines may be considered for departure, "does not mean that courts have unfettered authority to depart whenever that factor is invoked," and "[t]he court must still articulate why that factor is sufficiently atypical to justify a departure." *Id*. (citing *United States v. Bautista*, 258 F.3d

602, 606 (7th Cir. 2001)). There must be additional facts concerning the defendant's individual circumstances to make the particular case atypical or unusual. *Id*. at 848.

### 1. Consent to Deportation

One ground asserted by Caceres-Mejia for a reduction of his sentence is that he "agrees to waive any procedural right he has to an administrative removal proceeding," thereby "greatly assisting with the administration of justice by waiving all hearings and appeals." (Doc. 64, p. 3) This argument is unpersuasive.

A defendant seeking a downward departure for waiving deportation rights must demonstrate a colorable, non-frivolous defense to deportation and show a waiver of that defense would substantially assist the administration of justice. *United States v. Ramirez-Marquez*, 372 F.3d 935, 938 (8th Cir. 2004).

In *United States v. Juaregui*, 314 F.3d 961 (8th Cir. 2003), which Caceres-Mejia cites as support, the defendant was a lawful permanent resident of the United States entitled to the due process protections of the Fifth Amendment while he remained in the United States and before an order of deportation was entered. In sharp contrast, Caceres-Mejia is not a lawful permanent resident of the United States, but instead an illegal alien. Nor does he allege any colorable, non-frivolous defense to his deportation. In fact, his Plea Agreement specifically acknowledged that the offense to which he pleaded guilty was a removable offense, and that he affirmed his willingness to plead guilty regardless of any immigration consequences that his plea may entail - including his automatic removal from the United States. (Doc. 48, p. 5) Ostensibly then, Caceres-Mejia had already waived any rights he had in connection with his impending deportation, and the Court was fully aware of this at sentencing.

As the Court noted in *Ramirez-Marquez*, if a defendant attempts to waive deportation rights, but really does not forfeit any rights or assist in the administration of justice, "we do not consider the defendant's 'waiver' as being atypical from any other criminal case involving an alien facing deportation." *Id*. at 939. Such are the circumstances of the present case.

It has also been held that trial counsel's failure to move for a downward departure for a deportable alien's willingness to waive resistance to deportation did not constitute ineffective assistance of counsel. *See United States v. Sera*, 267 F.3d 872, 873-75 (8th Cir. 2001).

In accordance with the authorities just discussed, Caceres-Mejia's willingness to waive any procedural rights he has to an administrative removal proceeding is illusory and affords him no relief in this habeas proceeding.

## 2. Conditions of Confinement

As in the present case, the defendants in *Lopez-Salas* argued that unusually harsh conditions of confinement due to their alien status supported a downward departure. The two conditions of confinement presented in *Lopez-Salas*, as here, are that deportable aliens are not eleigible for minimum security facilities and they are not eligible to serve the final ten percent of their sentence (up to six months) in a half-way house. While recognizing that the circuits that have considered this issue since *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) have held that increased severity in the conditions of confinement resulting from alien status is a possible basis for departure in some circumstances, the Court in *Lopoez-Salas* held that the fact that a deportable alien may be subject to some increases in the severity of the conditions of confinement alone is not sufficient to make his case atypical or unusual. *Id*. at 849. Noting that the BOP has discretion in determining conditions of confinement and makes determinations in that area based on a wide

variety of factors in addition to alien status, the Court observed that "departure based on increased severity in conditions of confinement faced by deportable alien will be quite rare." *Id*. at 850 (citing *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994) Therefore, "a departure on this basis is only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's sentence." *Id*.

As an example of such circumstances, the Court in *Lopez-Salas* cites *United States v. Bakeas*, 987 F.Supp. 44 (D. Mass. 1997), a case involving embezzlement by a bank officer where the guidelines called for a twelve month sentence that would normally either be served in community confinement, or at most, in a minimum security prison camp, but because of the defendant's alien status he would serve that sentence under far more onerous conditions. In *Bakeas*, the Court found that the case satisfied the criteria for a possible departure, i.e., that it substantially increased the severity of the conditions of confinement, undeservedly, for a substantial portion of the defendant's sentence, and it departed from the twelve month guideline sentence to impose three years probation with a host of conditions including ten months to be served in home detention. The Eighth Circuit in *Lopez-Salas* instructed that "when contemplating such a departure, a district court should consider why a deportable alien is generally ineligible for minimum security or half-way house confinement," noting that a deportable alien is considered a greater escape risk, and is therefore subjected to more onerous conditions of confinement. *Id*. Pointing out that the guidelines mandated sentences of nine and fourteen years, the Court in *Lopez-Salas* concluded that ineligibility for half-way house assignment for the last six months because the BOP considers deportable aliens security risks is not, alone, an exceptional increase in the severity of the conditions of confinement. *Id*. at 850-51.

In another case on point, *United States v. Mohammed*, 315 F.Supp.2d 354, 367 (S.D.N.Y. 2003), the Court held that ineligibility for half-way houses or minimum security institutions "are not such extraordinary deprivations as to warrant a finding that the [Sentencing] Commission did not take into account the chance that someone in this sentencing range [33 to 41 months] would be subjected to them."

In the present case, Caceres-Mejia's guidelines imprisonment range was 108 to 135 months, but the statutory maximum was 48 months. (Doc. 52, p. 12) These are far different circumstances than those presented in *Bakeas*, and they are more in line with those found in *Lopez-Salas*. Accordingly, the undersigned concludes that because Caceres-Mejia is ineligible for assignment to a minimum security facility or to a half-way house for the last ten percent of his sentence due to his status as a deportable alien is not an exceptional increase in the severity of the conditions of confinement. Nor can it be said that the increased severity of the conditions of confinement is *undeserved* in light of Caceres-Mejia's explicit acknowledgment in his Plea Agreement that he wished to plead guilty "regardless of any immigration consequences that his plea may entail." (Doc. 48, p. 5)

Caceres-Mejia's ineffective assistance of counsel claim on this issue fails to afford him any relief. Although he was sentenced to the four year statutory maximum for his offense, Caceres-Mejia benefitted from his Plea Agreement and was sentenced to a term far less than the Guidelines advised for his relevant conduct. Caceres-Mejia has not established any probability that had his counsel advocated for a downward departure/variance due to the anticipated conditions of his confinement as a deportable alien that such an argument would have been successful, and his counsel cannot be faulted for failing to raise a non-meritorious issue. *See Blankenship v. United States*, 159 F.3d 336,

338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); *Holloway v. United States*, 960 F.2d 1348, 1356 (8th Cir. 1992) (there can be no prejudice where counsel fails to raise a non-meritorious issue); and, *United States v. Padilla*, 478 F.Supp.2d 865, 870 (E.D. Va. 2007) (even if counsel had moved for a downward departure on the basis of petitioner's deportation or inability to serve a portion of his sentence in a half-way house, no such departure was required, and petitioner failed to show prejudice).

### 3. Deportation

Caceres-Mejia alleges that the collateral consequences of his conviction include being "separated from his job, friends, and extended family forever." (Doc. 64, p. 4) Caceres-Mejia further alleges that banishment to his country is particularly onerous in his case as he had been living in the United States and "had relinquished his economic and financial connections to his country," and would have to "rebuild life with the possibility of being subjected to torture, just because he has returned to his country not on his own terms, but deported ..."[1] (Doc. 64, p. 4) These generalized, conclusory allegations are unavailing.

It is noteworthy that Caceres-Mejia has been deported from the United States to his country, Honduras, once before in 2008. (Doc. 52, p. 10) Following that deportation, he resided in Honduras for at least five years until 2013. (Doc. 52, p. 11) There is no indication that Caceres-Mejia was subjected to torture during that time, or that any other particularly oppressive consequences flowed from his deportation. Caceres-Mejia has family in Honduras, as his mother and a younger brother reside there. (Doc. 52, p. 11) Regarding his allegation about the harsh collateral consequences of

---

[1] Caceres-Mejia's Motion appears to be a form prepared for use by others, with some fill-in-the-blank information, and with the reference to violence in his country being made to Mexico, not Honduras. (Doc. 64, p. 4)

deportation affecting his wife and children, the PSR reflected that Caceres-Mejia is not actually married, but he has a long term girlfriend who lives in Massachusetts. They have three children together (who live with their mother in Massachusetts), and he reportedly had regular correspondence with his girlfriend and the children until his arrest. (Doc. 52, p. 11) Caceres-Mejia alleges that the unusually harsh collateral consequences of his conviction due to his alienage were "clearly not contemplated by the guideline provisions for this offense, nor factored in by the Court when [it] imposed the sentence." (Doc. 64, p. 5) The Court disagrees.

Similar arguments were advanced in *Restrepo*, and there the Court concluded "we cannot see that these effects justify shortening the sentence prescribed by the Guidelines." 999 F.2d at 647. The Court in *Restrepo* observed, "... it is difficult to believe that the Commission was not conscious that a large number of defendants sentenced in the federal courts are aliens," noting that in 1991 23% of the defendants sentenced under the Guidelines were aliens. *Id*. By 2014, the percentage of defendants sentenced under the Guidelines who were aliens had grown to 42%. United States Sentencing Commission, *FY2014 Sourcebook*, Table 9.

The Court in *Restrepo* also commented that "deportability is at best a factor at war with itself." *Id*. This is so because "[o]n the one hand, there is no doubt that in some cases deportation may cause substantial hardship," but "[o]n the other hand, the district court's reduction of the prison term in recognition of those hardships does not eliminate [them] or make the effects less harsh[,] [but] rather, it advances the day when deportation will occur." *Id*. Thus, the Court remarked, despite the fact that hastening deportation would seem to exacerbate rather than remedy its harshness, "a defendant who seeks such a departure apparently prefers that result to the longer sentence," and that as such, "it is perhaps erroneous to view deportation as so harsh as to warrant a reduction in the

period of imprisonment prescribed by the Guidelines." *Id*. A departure from the Guidelines must rationally be capable of remedying or alleviating the problem caused by the factor upon which departure is sought. The fact that Caceres-Mejia is to be deported is neither remedied nor alleviated by a reduction of his sentence; and, based upon his history of illegal re-entry into the United States after a previous deportation, a reduction of sentence would arguably only quicken that recurrence.

Other courts have held that the prospect of deportation, without more, does not support a downward departure at sentencing. *See: Mohammed*, 315 F.Supp.2d at 367 ("nor do the hardships attendant on deportation warrant a departure"); and, *United States v. Samboy*, 738 F.Supp.2d 190, 193 (D.Mass. 2010) ("without more, the prospect of deportation is not grounds for a downward departure"). Here, Caceres-Mejia has not presented us with anything more, thereby failing to demonstrate that his particular case presents extraordinary circumstances for which downward departure or variance would be warranted.

Nor has Caceres-Mejia shown that he was prejudiced by his counsel's failure to seek a downward departure/variance based on his status as a deportable alien. At sentencing, the Court had Caceres-Mejia's PSR which stated that he had been previously deported in 2008, had then lived in Honduras until 2013, and was subject to deportation. The PSR also contained information about Caceres-Mejia's family and responsibilities. The Court was, therefore, aware of the relevant circumstances at the time of sentencing, and Caceres-Mejia has not shown that, even if his counsel had asked for a downward departure/variance based on his probable deportation, that the sentence imposed would have been any different. *See Samboy*, 738 F.Supp.2d at 193 (PSR provided that defendant was a legal resident subject to deportation, as well as information about defendant's family and responsibilities; no showing of prejudice).

### D.  No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005) (citing 28 U.S.C. § 2255). No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.* 541 F.3d 814, 817 (8th Cir. 2008). Those are the circumstances in this case. Resolution of Caceres-Mejia's claims can be accomplished by reviewing the record and applicable law. A thorough review of Caceres-Mejia's § 2255 Motion, the files and records of this case, and applicable law, shows that Caceres-Mejia is entitled to no relief. Accordingly, the undersigned recommends the summary dismissal of Caceres-Mejia's § 2255 Motion without an evidentiary hearing.

### E.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *See Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

In the present case, and for the reasons stated above, the undersigned finds that there is no substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Caceres-Mejia's claims are not supported by the record in this case. I recommend that Caceres-Mejia's Motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE** without an evidentiary hearing. I further recommend that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of March, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE